T.C. Summary Opinion 2003-146

UNITED STATES TAX COURT

EDWARD L. PYRDUM AND TERRI L. PYRDUM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1052-02S.                    Filed October 2, 2003.

Edward L. Pyrdum and Terri L. Pyrdum, pro se.

<u>Edsel Ford Holman, Jr.</u>, for respondent.

POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463[1] of the Internal Revenue Code
in effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

_____

[1]  Unless otherwise indicated, subsequent section references are
to the Internal Revenue Code in effect for the years in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

Respondent determined deficiencies and accuracy-related penalties under section 6662(a) in petitioners' 1999 and 2000 Federal income taxes in the following amounts:

| Year | Deficiency | Sec. 6662(a) Penalty |
|------|-----------|----------------------|
| 1999 | $6,783 | $1,356.60 |
| 2000 | 10,565 | 2,113.00 |

The issues are (1) whether petitioners are entitled to deductions on Schedule C, Profit or Loss From Business, for expenses of $21,194 and $30,178 for the years in issue, and (2) whether petitioners are liable for the accuracy-related penalties under section 6662(a).  Petitioners resided in Shelbyville, Tennessee, at the time the petition was filed.

## Background

The facts may be summarized as follows.  On Schedule C included in their 1999 and 2000 Federal income tax returns petitioners claimed the following deductions:

|  | 1999 | 2000 |
|------|------|------|
| Car & truck expenses | $10,844 | $16,268 |
| Mortgage interest | -0- | 6,767 |
| Depreciation | 4,125 | -0- |
| Supplies | 750 | 375 |
| Travel | 2,750 | 1,265 |
| Meals | 325 | 238 |
| Utilities | 2,400 | 4,136 |
| Business use of home | -0- | 1,129 |

Petitioners reported income of $2,424 in 1999 and $2,679 in 2000 from the Schedule C activity.[2]  The car expenses were computed by using the standard mileage expense method.  See Rev. Proc. 98-63, 1998-2 C.B. 818 ($.31 per mile); Rev Proc. 99-38, 1999-2 C.B. 525 ($.325 per mile).  The depreciation deduction claimed for the 1999 taxable year was for automobiles for which deductions using the standard rate were claimed, and petitioners concede that they are not entitled to that deduction.  On the 2000 tax return, petitioners deducted the mortgage interest expense also as an itemized deduction, and they concede that the deduction was properly disallowed on the Schedule C.

The activity reported on the Schedules C related to petitioner Terri L. Pyrdum (hereinafter petitioner).  Petitioners divorced in 2001, and petitioner is now married to Allan Brittain (Mr. Brittain).  During 1999 and 2000, petitioner was employed full time as an inside sales representative by Holt Specialty Equipment (Holt), a machinery manufacturer.  As a sales representative, she traveled to various machinery trade shows in the region.  Holt reimbursed petitioner for all of her travel expenses incurred on behalf of Holt.

During the years in issue, petitioner was also associated with Key Credit Corp. (Key Credit), a financing company.  Key

---

[2]  In the notice of deficiency respondent increased petitioners' income by these amounts.  Respondent concedes that these items of income were included in the returns.

Credit financed equipment purchases. Petitioner would refer a purchaser of equipment to Key Credit, and, if the financing were approved, petitioner would get a nominal percentage of the profit on the financing. According to Emelio Salinas, petitioner's contact with Key Credit, the maximum amount petitioner could have made under the arrangement would have been $2,000 to $5,000 per year. Key Credit treated petitioner as an independent contractor and issued her Forms 1099 for 1999 and 2000.

Key Credit did not require that petitioner travel, and she was informed that Key Credit would not reimburse her for any travel expenses she incurred. The travel expenses shown on the Schedules C allegedly were incurred by petitioner in connection with her association with Key Credit. With respect to the car expenses, petitioner did not maintain a log or other record of mileage. With regard to the travel and meal expenses, petitioner introduced receipts which consist of copies of a round trip air travel itinerary for Mr. Brittain and petitioner to Columbus, Ohio, in 2000 of $406, a round trip air travel itinerary for petitioner to Buffalo, New York, in 2000 of $218 to meet with Mr. Brittain, a hotel receipt from Columbus, Ohio, of $231, and a ticket stub to a concert in Columbus, Ohio, of $61. The deductions for utilities allegedly are derived from the utility expenses at petitioners' personal dwelling.

## Discussion

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business. Section 274(d), however, provides that no deduction is allowed for certain expenses unless the taxpayer "substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement", inter alia, the time and place of the travel and the business purpose of the expense. The deductions that fall within section 274(d) include travel expenses including meals and lodging, sec. 274(d)(1), and deductions "with respect to any listed property (as defined in section 280F(d)(4)", sec. 274(d)(4). Included within the ambit of "listed property" are passenger automobiles. Sec. 280F(d)(4)(A)(i). To substantiate the adequate records requirement for a passenger automobile, "a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * which, in combination, are sufficient to establish each element of an expenditure". Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). To substantiate a business purpose for listed property "the record must contain sufficient information as to each element of every business/ investment use." Sec. 1.275-5T(c)(2)(ii)(C), Temporary Income Tax Regs., 50 Fed. Reg. 46018 (Nov. 6, 1985).

With regard to the deductions for car expenses, petitioner has no logs or trip sheets.[3] Rather, from what we gather, she totaled the mileage driven for various periods and extrapolated the total yearly mileage. This does not meet the substantiation requirements of section 274 and the regulations thereunder. Moreover, we note that the indicated business mileage driven during 1999 was 34,981 miles ($10,844 ÷ .31) and during 2000 was 51,644 miles ($16,268 ÷ .315). During this time petitioner was also a full time employee at Holt, and Holt reimbursed her for any travel expenses to trade shows.[4] While it may not have been impossible to accomplish this driving, we find it highly unlikely. For example, during 2000, she would have had to have driven almost 1,000 miles per week, and, since she worked for Holt full time, that driving would have to have been done on the weekends. That would be approximately 500 miles per day.[5] Respondent's disallowance of the car expenses is sustained.

---

[3] Sec. 7491, concerning the burden of proof, is not applicable here because petitioners have not satisfied the substantiation requirement. Sec. 7491(a)(2)(A).

[4] Petitioner also introduced a copy of a hotel receipt from a hotel in Alpharetta, Georgia, with the written notation "Show Atlanta (16-18) - May - (Took vacation from work to go)". The notation is contradicted by petitioner's testimony that Holt reimbursed her for travel to trade shows.

[5] We note that petitioner was in Buffalo, New York, and Columbus, Ohio, on two weekends and her husband testified that she was not away every weekend. Given that, the actual mileage per week would have been even greater.

Similarly, with regard to the other travel expenses, petitioner has no records indicating the business purpose of the trips. Petitioner testified that the trip to Buffalo, New York, was to meet a "potential customer", but there is no indication of any business discussions. While in preparation for the trial petitioner wrote the name Davis Evans on the Columbus, Ohio, hotel receipt, there again is no indication of any business discussions. These records do not satisfy the adequate record requirements of section 274, and we sustain respondent's disallowance of the travel expense deductions.[6]

Turning to the deductions claimed for "utilities", as we understand, petitioners claim that petitioner used a portion of their home for her business. For the 2000 taxable year petitioners also claimed a deduction for business use of their home. Section 280A(a) prohibits any deduction "with respect to the use of a dwelling unit which is used by the taxpayer * * * as a residence." A portion of a dwelling may be exempted from section 280A(a) if it is exclusively used on a regular basis "as the principal place of business for any trade or business of the taxpayer". Sec. 280A(c)(1).

---

[6] Petitioner also introduced into evidence pages of a January and December 2000 calendar and what she describes as customer sheets containing the names, addresses, and telephone numbers of potential customers. Neither indicated whether she had any business meetings with these customers during her travels.

We begin by noting that petitioners have no records showing the total amounts paid for utilities. For the 2000 taxable year they claimed a deduction based on the business use of a portion of the dwelling and for both years they claimed utility expenses connected with this use. According to a Form 8829, Expenses for Business Use of Your Home, included in the 2000 tax return, petitioner used 14.81 percent of the home exclusively for her Key Credit business. If this were correct, petitioners' total utility bills for 2000 would have been approximately $27,000 ($4,000 ÷ .1481). We decline to visit further into this land of Oz.[7] Respondent's disallowance of the utility expenses is sustained.

Furthermore, petitioners have not substantiated that petitioner used a portion of the home exclusively for her business. Petitioner-husband testified that the home office was in the living room of the house. But, there is nothing to indicate that exclusive use of that room was for the Key Credit business. Petitioners have not shown that the exception to section 280A(a) applies, and we sustain respondent's determination.

The remaining deductions for 1999 and 2000 were for supplies. Again, petitioners have no receipts or other documents

---

[7] According to petitioners, the utility records could not be located. We suspect that we know the reason for this.

substantiating these alleged expenditures.  Respondent's determinations are sustained.

Penalties Under Section 6662(a)

As relevant here, section 6662(a) imposes a penalty in the amount of 20 percent of the underpayment due to, inter alia, negligence or substantial understatement of tax.  Negligence includes "any failure to make a reasonable attempt to comply with the provisions of" the revenue laws and any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  We find that there was no reasonable attempt to comply.[8]  Petitioner-husband prepared the returns using information supplied by petitioner.  Petitioners failed to comply with the substantiation requirements of section 274.  Petitioners claimed double deductions for mortgage interest in 2000 and, in essence, for automobile expenses in 1999.  Putting aside the section 280A failure to substantiate the business use of any portion of the home, the amounts claimed for utilities were, at best, fanciful, and the same may be said for the claims of the mileage driven.  Respondent's determinations of the accuracy-related penalties under section 6662(a) are sustained.

---

[8]  Respondent has satisfied his burden of production with respect to the penalties.  Sec. 7491(c).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.